**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ROXANNE CRIBBS RINGER, *on behalf of herself and on behalf of her minor child, E.R.,* et al., | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL NO. 5:25-cv-01181-OLG |
| COMAL INDEPENDENT SCHOOL DISTRICT, et al., | § § § | |
| *Defendants.* | § § § | |

---

**DEFENDANTS' MOTION TO DISMISS AND RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

TO THE HONORABLE U.S. DISTRICT JUDGE:

Defendants, Fort Worth Independent School District, Northwest Independent School District, Lovejoy Independent School District, McKinney Independent School District, Frisco Independent School District, Georgetown Independent School District, Rockwall Independent School District, Flour Bluff School District, Comal Independent School District, Azle Independent School District, Conroe Independent School District, and Mansfield Independent School District[1] respectfully file this consolidated Motion to Dismiss and Response in Opposition to Plaintiffs' Motion for Preliminary Injunction  and, in support thereof, would show unto the Court as follows:

On June 20, 2025, Governor Abbott signed Texas Senate Bill 10 into law which allows the Ten Commandments to be displayed in all public-school classrooms. Tex. S.B. 10, 89th Leg. R.S.

---

[1] The undersigned counsel has also discussed representation by the Texas Attorney General with counsel for McAllen Independent School District; however, at this time, McAllen ISD has decided to be represented by outside counsel of its own choosing.

(2025). Plaintiffs have brought claims against the Defendant school districts alleging violations of the Establishment Clause and Free Exercise Clause of the United States Constitution. *See* ECF 1. Defendants, collectively, hereby move for dismissal of Plaintiffs' Complaint for the following reasons: (1) Plaintiffs' claims are not ripe for adjudication; (2) Plaintiffs lack standing; and, (3) Plaintiffs failure to state a claim for relief. Alternatively, should the Court deny Defendants' Motion to Dismiss, Defendants would show that Plaintiffs are not entitled to a preliminary injunction for many of the same reasons that are more specifically addressed herein.

Relying on *Nathan* and *Brumley,* Plaintiffs declare "[l]ast month, this district court ruled that S.B. 10 is 'plainly unconstitutional' and likely violates the Establishment and Free Exercise Clauses of the First Amendment." ECF 1, ¶3. In *Nathan,* the Court indisputably relied heavily on the Fifth Circuit's opinion in *Brumley* finding "*Brumley* is binding on this Court." *See Nathan v. Alamo Heights Ind. Sch. Dist.,* No. SA-25-CV-00756-FB, 2025 WL 2417589, at *28 (W.D. Tex. Aug. 20, 2025). However, the *Brumley* opinion is now vacated. *Roake v. Brumley,* No. 24-30706, 2025 WL 2856550, at *1 (5th Cir. Oct. 6, 2025). Because the *Brumley* opinion is vacated, the *Nathan* decision is also likely flawed and should not be considered.

Plaintiffs further complain that some "Defendant School Districts have pressed forward with actually posting S.B. 10 displays in classrooms . . . even after receiving a letter from plaintiffs' counsel in *Nathan* notifying them of the *Nathan* court's ruling." ECF 1, ¶4. Yet, when asked what the other districts do if the Court rules in this case in favor of plaintiffs, Plaintiffs' counsel, the same as Plaintiffs' counsel herein, specifically indicated, "[w]e are not asking you for an injunction against any district that is not named in the complaint." *See* Transcript of Motion Hearing, *Nathan, et al. v. Alamo Heights Ind. Sch. Dist.,* No. 5:25-cv-00756-FB (Aug. 15, 2025), 19:21-20:2. Absent any injunction against them and apparent lack of viability of Plaintiffs' claims, the Defendant school districts named herein were simply following Texas state law and continue to do so today.

# TABLE OF CONTENTS

**TABLE OF CONTENTS**.......................................................................iii

**TABLE OF AUTHORITIES**.............................................................iv

**INTRODUCTION**..............................................................................1

**STANDARD OF REVIEW**................................................................3

**ARGUMENT AND RESPONSE**.........................................................4

  I.   Plaintiffs' Facial Challenge Claims Should be Dismissed under Rule 12(b)(1)
      for Lack of Subject Matter Jurisdiction.....................................................5

    A.   Plaintiffs do not have standing. .........................................................5

        1.   Plaintiffs do not allege a concrete and imminent injury. ..............................6

        2.   Plaintiffs' alleged injury is not fairly traceable to the Defendants. ...........................8

        3.   Plaintiffs do not allege an injury redressable by the Defendants...............................8

    B.   Plaintiffs' claims are not ripe. ............................................................9

  II.   Plaintiffs' Claims Should be Dismissed under Rule 12(b)(6) for Failure to
      State a Claim. ......................................................................................11

    A.   Plaintiffs failed to establish an Establishment Clause violation. ...................................11

        1.   S.B. 10 does not Violate the Establishment Clause.....................................13

        2.   History indicates long-standing uses of the Ten Commandments. ...........................14

        3.   S.B. 10 does not bear any of the historic hallmarks of an establishment. ..................16

        4.   S.B. 10 does not implicate any coercion.....................................................19

        5.   *Stone* cannot be considered good law. .......................................................20

    B.   Plaintiffs failed to establish a Free Exercise violation. .................................22

  III.   Plaintiffs' Motion for Preliminary Injunction Should be Denied. ...................................24

**PRAYER** .....................................................................................27

**CERTIFICATE OF SERVICE** ........................................................28

**CERTIFICATE OF CONFERENCE** ................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abortion Servs. v. Lakey,*
  667 F.3d 570 (5th Cir. 2012) ...................................................................................25

*ACLU Neb. Found. v. City of Plattsmouth, Neb*
  419 F.3d........................................................................................................... 17, 19

*Agostini v. Felton,*
  521 U.S. 203 (1997) ..............................................................................................21

*Allen v. Wright,*
  468 U.S. 737 (1984)................................................................................................. 8

*Am. Legion v. Am. Humanist Ass'n,*
  588 U.S. 29 (2019) ......................................................................................... passim

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................3

*Barber v. Bryant,*
  860 F.3d 345 (5th Cir. 2017) ...........................................................................1, 6, 7

*Book People, Inc. v. Wong,*
  91 F.4th 318 (5th Cir. 2024) .................................................................................. 9

*Books v. City of Elkhart, Ind.,*
  235 F.3d 292 (7th Cir. 2000).................................................................................17

*Bowen v. Kendrick,*
  487 U.S. 589 (1988)...............................................................................................12

*Bowen v. Roy,*
  476 U.S. 693 (1986) .............................................................................................. 22

*Braidwood Mgmt, Inc. v. Equal Emp. Opp. Comm'n,*
  70 F.4th 914 (5th Cir. 2023)................................................................................... 9

*California v. Texas,*
  593 U.S. 659 (2021) ............................................................................................... 9

*Canal Auth. of Fla. v. Callaway,*
    489 F.2d 567 (5th Cir. 1974) .................................................................25

*Carney v. Adams,*
    592 U.S. 53 (2020) .............................................................................5

*Carson v. Makin,*
    596 U.S. 767 (2022). .......................................................................18, 22

*Casillas v. Madison Ave. Assocs., Inc.,*
    926 F.3d 329 (7th Cir. 2019) ................................................................ 9

*Choice Inc. of Texas v. Greenstein,*
    691 F.3d 710 (5th Cir. 2012)................................................................10

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520 (1993).........................................................................22

*City of El Cenizo v. Texas,*
    890 F.3d 164 (5th Cir. 2018) ...............................................................25

*City of Ocala v. Rojas,*
    598 U.S. ____, 143 S.Ct. 764 (2023).......................................................7

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013).........................................................................8

*Cnty. of Allegheny v. Am. Civ. Lib. Union,*
    492 U.S. 573 (1989).........................................................................18

*Croft v. Perry,*
    624 F.3d 157 (5th Cir. 2010) .......................................................11, 12, 22

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) .........................................................................8

*Daves v. Dallas County,*
    22 F.4th 522 (5th Cir. 2022) ...............................................................8

*Doe v. Beaumont Indep. Sch. Dist.,*
    240 F.3d 462 (5th Cir. 2001)...........................................................20, 22

*Doe v. Tangipahoa Par. Sch. Bd.,*
    494 F.3d 494 (5th Cir. 2007)...............................................................7,

*E.T. v. Paxton,*
    19 F.4th 760 (5th Cir. 2021) ...............................................................26

*Espinoza v. Montana Dept. of Revenue,*
   591 U.S. 464 (2020) ............................................................................................18

*Everson v. Board of Education,*
   330 U.S. 1 (1947) ............................................................................................... 6

*FDA v. All. For Hippocratic Med.,*
   602 U.S. 367 (2024) .........................................................................................7, 8

*Freedom from Rel. Found. v. Mack,*
   49 F.4th 941 (5th Cir. 2022) ............................................................................. 15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
   528 U.S. 167 (2000) ........................................................................................... 8

*Fuhr v. City of Sherman, Tex.,*
   No. 4:21-CV-549-SDJ, 2022 WL 828926 (E.D. Tex. Mar. 18, 2022) ........................................ 4

*Fulton v. City of Philadelphia,*
   593 U.S. 522 (2021)........................................................................................23, 24

*Gines v. D.R. Horton, Inc.,*
   699 F.3d 812 (5th Cir. 2012) .............................................................................. 4

*Gonzaga University v. Doe,*
   536 U. S. 273 (2002) .......................................................................................... 6

*Hilsenrath v. School Dist. of the Chathams,*
   136 F.4th 484 (3d Cir. 2025) ............................................................................. 16

*Jones v. Bush,*
   122 F.Supp.2d 713 (N.D. Tex. 2000) ................................................................ 26

*Kennedy v. Bremerton Sch. Dist.,*
   597 U.S. 507 (2022) ................................................................................... passim

*Lamb's Chapel v. Center Moriches Union Free School Dist.,*
   508 U.S. 384 (1993)......................................................................................... 20

*Lee v. Weisman,*
   505 U.S. 577 (1992) .........................................................................................14

*Lemon v. Kurtzman,*
   403 U.S. 602 (1971).......................................................................................7, 21

*Lewis v. Cont'l Bank Corp.,*
   494 U.S. 472 (1990) ...........................................................................................5

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,*
   594 F.3d 383 (5th Cir. 2010) ................................................................ 4

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ................................................................5, 7, 8

*Lynch v. Donnelly,*
   465 U.S. 668 (1984) ................................................................15, 17

*Mahmoud v. Taylor,*
   606 U.S. ____, 145 S.Ct. 2332 (2025) ................................................20, 23, 24, 26

*Marsh v. Chambers,*
   463 U.S. 783 (1983) ................................................................15, 17

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n,*
   584 U.S. 617 (2018) ................................................................23

*McCreary Cnty., Ky. v. Am. C.L. Union of Ky.,*
   545 U.S. 844 (2005) ................................................................ 11

*McGowan v. Maryland,*
   366 U.S. 420 (1961) ................................................................17

*Miss. Power & Light Co. v. United Gas Pipe Line Co.,*
   760 F.2d 618 (5th Cir. 1985) ................................................................ 26

*Moody v. NetChoice, LLC,*
   603 U.S. 707 (2024) ................................................................11, 12, 22, 25

*Murthy v. Missouri,*
   603 U.S. 43 (2024) ................................................................ 8

*Nathan v. Alamo Heights Ind. Sch. Dist.,*
   No. SA-25-CV-00756-FB, 2025 WL 2417589 (W.D. Tex. Aug. 20, 2025) ................................................................ ii

*New Doe Child #1 v. United States,*
   901 F.3d 1015 (8th Cir. 2018) ................................................................ 4

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,*
   833 F.2d 583 (5th Cir. 1987) ................................................................ 9

*Paterson v. Weinberger,*
   644 F.2d 521 (5th Cir. 1981) ................................................................3

*Pierce v. Hearne Indep. Sch. Dist.*,
    600 F.App'x 194 (5th Cir. 2015) ..................................................................................3

*Plotkin v. IP Axess Inc.*,
    407 F.3d 690 (5th Cir. 2005) ......................................................................................3

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ......................................................................................3

*Roake v. Brumley*,
    141 F.4th 614 (5th Cir. 2025) ............................................................................1, 9, 10

*Santa Fe Indep. Sch. Dist. v. Doe*,
    530 U.S. 290 (2000) ..................................................................................................14

*School Dist. of Abington Township v. Schempp*,
    374 U.S. 203 (1963) ......................................................................................2, 19, 23

*Shurtleff v. Boston*,
    596 U.S. 243 (2022) ........................................................................................13, 14, 19

*Staley v. Harris County*,
    485 F.3d 305 (5th Cir. 2007) ............................................................................2, 10, 11

*Stone v. Graham*,
    449 U.S. 39 (1980) ..................................................................................1, 2, 20, 21

*Sullivan v. Leor Energy, LLC*,
    600 F.3d 542 (5th Cir. 2010) ......................................................................................4

*Texas v. United States*,
    497 F.3d 491 (5th Cir. 2007) ....................................................................................10

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985) ....................................................................................................9

*Town of Greece v. Galloway*,
    572 U.S. 565 (2014) ........................................................................................13, 22, 23

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ....................................................................................................8

*Trinity Lutheran Church of Colum., Inc. v. Comer*,
    582 U.S. 449 (2017) ..................................................................................................18

*Trump v. CASA, Inc.*,
    No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) ......................................26, 27

*United States v. Perez,*
    43 F.4th 437 (5th Cir. 2022) ...................................................................... 13

*United States v. Salerno,*
    481 U.S. 739, (1987) ................................................................................ 11

*United States v. Vuitch,*
    402 U.S. 62 (1971) ................................................................................... 13

*Valley Forge Christian Coll. V. Ams. United for Separation of Church & State, Inc.,*
    454 U.S. 464 (1982) .................................................................................. 6

*Van Orden v. Perry,*
    545 U.S. 677 (2005) ........................................................................... passim

*Walz v. Tax Comm'n of City of New York,*
    397 U.S. 664 (1970) ................................................................................. 17

*Washington State Grange v. Wash. State Rep. Party,*
    552 U.S. 442 (2008) ................................................................................. 12

*West Virginia v. Barnette,*
    319 U.S. 624 (1943) ................................................................................. 20

**Statutes**

Tex. Educ. Code §25.0811 ............................................................................. 11

U.S. Const. art. III........................................................................................... 15

U.S. Const. art. 3, § 2, cl. 1 ............................................................................. 5

**Rules**

Fed. R. Civ. P. 12(b)(1) ....................................................................... 3, 4, 5, 12

Fed. R. Civ. P. 12(b)(6) ........................................................................... 3, 4, 5

**Other Authorities**

Brief of Amicus Curiae United States in Support of Respondents,
    *Van Orden v. Perry,* 545 U.S. 677 (2005), 2005 WL 263790 ..................... 15

Hall & Picciotti-Bayer, *Ten Commandments in the Public Square and Public Schools,*
    William & Mary Bill of Rights J. 37-38 (forthcoming October2025) ................ 15, 16

Jenna Weismann Joselit, *Set in Stone: America's Embrace of the Ten Commandments* (2017) .........16

John T. Noonan, *The Believer and the Powers That Are: Cases, History, and other Data Bearing on the Relation of Religion and Government* 1987) ..................................17

John W. Welch *Biblical Law in America: Historical Perspectives and Potentials for Reform,* 2002 B.Y.U. L. Rev. 611 (2002)..................................................................17

La. H.B. 71................................................................................................. 9

Mark Hall, First Supp. Expert Report, ECF 260-3, *Cave v. Thurston,* No. 4:18-cv-342-KGB (E.D. Ark. Mar. 6, 2023)..................................16

Stephen Botein, *Early American Law and Society* (1982)..................................17

S.B. 10 ........................................................................................*passim*

Steven K. Green, *The Fount of Everything Just and Right? The Ten Commandments as a Source of American Law,* 14 J.L. & Religion (2000)..................................17

Texas Senate Journal 3862, 89th Leg. R.S. (2025) ..................................1

## INTRODUCTION

With overwhelming legislative support, Governor Abbott signed Senate Bill 10 (S.B. 10) into law on June 20, 2025, and it became effective September 1, 2025. Senate Journal 3862, 89th Leg., R.S. (2025). S.B. 10 requires any public or secondary school to display the Ten Commandments in each classroom. Notably, a public display of the same version of the Ten Commandments required by S.B. 10 has previously been declared constitutional by the United States Supreme Court. *See Van Orden v. Perry,* 545 U.S. 677 (2005). While no school is required to purchase any posters or copies of the Ten Commandments to display, schools must accept any offers of privately donated posters or copies that meet the requirements of S.B.10.

While Defendants are aware and acknowledge the Supreme Court's *per curiam* decision in *Stone v. Graham,* there is no doubt that *Stone* is no longer good law. *See Stone v. Graham,* 449 U.S. 39 (1980). Nor is there any doubt that *Lemon v. Kurtzman,* upon which the *Stone* court relied, has been emphatically rejected. Presumably, this may be one of the reasons the Fifth Circuit vacated the *Brumley* opinion. *Brumley,* 2025 WL 2856550, at *1.

As of the filing of Plaintiffs' Complaint, ECF 1, many of the Plaintiffs, including their children, have not seen any display of the Ten Commandments contemplated by S.B. 10.[2] There is not any indication that any school has used district funds to purchase any posters nor any indication that posters meeting the requirements of S.B. 10 have been donated to these Defendants. As a result, any claim by the Plaintiffs that "Defendants . . . will unavoidably violate Plaintiffs' rights" is nothing more than mere conjecture and speculation. *See* ECF 1, ¶¶ 230, 239.

Such speculation requires dismissal due to a lack of subject matter jurisdiction for lack of standing and ripeness. First, the Fifth Circuit specifically requires "an encounter with the offending item or action to confer standing" in "cases involving religious displays." *Barber v.*

---

[2] Plaintiffs specifically indicated that as of September 22, 2025, neither Georgetown ISD, Fort Worth ISD, Rockwall ISD nor Mansfield ISD had installed any displays of the Ten Commandments in compliance with S.B. 10. *See* ECF 1, ¶¶ 95, 98, 104, and 106, respectively.

*Bryant,* 860 F.3d 345, 353 (5th Cir. 2017). The required "encounter" is missing here as none of the Plaintiffs within Georgetown ISD, Fort Worth ISD, Rockwall ISD or Mansfield ISD have encountered any display of the Ten Commandments under S.B. 10. Second, where "no decision has been made regarding any aspect of the future display" of the Ten Commandments, the Fifth Circuit has determined such cases are not ripe. *Staley v. Harris County,* 485 F.3d 305, 309 (5th Cir. 2007) (en banc). So too here. None of the Plaintiffs bringing a facial challenge to S.B. 10 currently have any information, nor have they alleged any, regarding how, when or even *if* the Ten Commandments may be displayed in their respective classrooms. Plaintiffs' failure to satisfy standing and ripeness requires dismissal of Plaintiffs' claims on jurisdictional grounds.

Plaintiffs' claims should also be dismissed for failure to state a claim upon which relief can be granted. Notwithstanding Plaintiffs' claim that the version adopted by S.B. 10 is a "Protestant version," ECF 1, ¶ 61, S.B. 10 actually adopts a non-sectarian version not readily attributable to any particular religious group. Plaintiff's own expert is seemingly confused whether it is Protestant or Lutheran (Catholics). The hypothetical posting of the Ten Commandments as contemplated by S.B. 10 does not implicate the hallmarks of religious establishment. Rather, a passive display of the Ten Commandments is more reflective of the long-standing, historical display of the Ten Commandments in monuments, public buildings and State houses and use in the Nation's education system. *See* Ex. A, Report of Mark Hall. Any reliance upon *Stone v. Graham* is simply misguided, and S.B. 10 should be considered independently constitutional. Plaintiffs' Free Exercise claims also fail since S.B. 10 does not require Plaintiffs to participate in any activity. The Free Exercise Clause forbids "affirmatively compel[ing] individuals 'to *perform* acts undeniably at odds with fundamental tenets of their religious beliefs.'" *School Dist. of Abington Township v. Schempp,* 374 U.S. 203, 223 (1963) (emphasis added).

Finally, should the Court consider the merits of Plaintiffs' claims, for many of the same reasons outlined above, and more specifically addressed herein, the Court should deny Plaintiffs' Motion for Preliminary Injunction.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal where a court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A plaintiff has the burden to establish subject matter jurisdiction. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Sovereign immunity (as recognized by the Eleventh Amendment) deprives a court of jurisdiction and is thus properly raised in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Pierce v. Hearne Indep. Sch. Dist.*, 600 F.App'x 194, 197 (5th Cir. 2015) (per curiam).

Under Rule 12(b)(1), a defendant may challenge a court's subject matter jurisdiction through a "facial attack" or a "factual attack." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Where, as here, a defendant challenges subject matter jurisdiction on the face of a complaint, the district court presumes the plaintiff's factual allegations to be true and determines whether those allegations are legally sufficient to establish jurisdiction. *See id.*

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

When reviewing a motion to dismiss for failure to state a claim, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also, Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). Courts may consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim.[3] *Fuhr v. City of Sherman, Tex.*, No. 4:21-CV-549-SDJ, 2022 WL 828926, at *2 (E.D. Tex. Mar. 18, 2022) (citing *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012).

## ARGUMENT AND RESPONSE

Plaintiffs' claims should be dismissed without prejudice due to a lack of subject matter jurisdiction. Fifth Circuit precedent proscribes Plaintiffs' claims based on standing and ripeness, and Plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). Should the Court decline to dismiss Plaintiffs' Complaint on jurisdictional grounds, Plaintiffs' Complaint should also be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Pursuant to the "unequivocal directive" that "the Establishment Clause *must* be interpreted by referenced to historical practices and understanding" and the Nation's long-standing history of displaying religious symbols on public property, a passive display of the Ten Commandments does not violate the Equal Protection Clause or Free Exercise Clause of the United States Constitution. *See New Doe Child #1 v. United States,* 901 F.3d 1015, 1020 (8th Cir. 2018) (emphasis in original).

Dismissal of Plaintiffs' Complaint would render Plaintiffs' Motion for Preliminary Injunction, ECF 4, as moot; however, should the Court not be inclined to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6), the Court should deny Plaintiffs'

---

[3] Plaintiffs attached the Declaration of Steven K. Green, ECF 4-5, in support of their Motion for Preliminary Injunction. In response, Defendants have included the Report of Dr. Mark Hall which contradicts many of the conclusions reached by Mr. Green.

Motion for Preliminary Injunction because Plaintiffs are unlikely to succeed on the merits, they will not suffer irreparable harm, and the equities and public interest weigh in Defendants' favor.

I.  **Plaintiffs' Facial Challenge Claims Should be Dismissed under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction.**

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477 (1990); *see also*, U.S. Const. art. 3, § 2, cl. 1. Plaintiffs' failure to allege a concrete, actual injury that is both traceable and redressable immolates their standing claims, and the standing analysis is equally applicable to the question of ripeness. A failure of any one of the foregoing reasons requires dismissal of Plaintiffs' claims for lack of subject matter jurisdiction.

A.  **Plaintiffs do not have standing.**

Plaintiffs lack standing to bring their claims because their purported injury—potentially being subjected to a non-sectarian version of the Ten Commandments—is neither fairly traceable to nor redressable by the Defendants as none know how, when, or even *if,* the alleged Ten Commandments may be seen or viewed by the Plaintiffs. Plaintiffs "bear[] the burden of establishing standing as of the time [they bring] th[e] lawsuit and maintaining it thereafter." *Carney v. Adams,* 592 U.S. 53, 59 (2020). As such, at least as of September 22, 2025, the filing date of Plaintiffs' Complaint, each Plaintiff must establish standing which is a "constitutional prerequisite for jurisdiction." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992).

The Supreme Court has explained the "irreducible constitutional minimum of standing requires "an invasion of a legally protected interest which is concrete and particularized, not 'conjectural or 'hypothetical;' 'fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court; and 'likely,' as opposed to merely 'speculative' that the injury will be 'redressed by a favorable decision.'" *Id.* (collecting cases). As the complained of conduct or offense has not occurred, and

may never occur, Plaintiffs fail to meet any of the requirements for standing.[4]

### 1. Plaintiffs do not allege a concrete and imminent injury.

Plaintiffs have failed to allege anything more than a hypothetical injury. Plaintiffs allege that they "will be harmed" by displaying the Ten Commandments as contemplated by S.B. 10. *See,* ECF 1, ¶¶ 123-127, 152-159, 196-202, and 208-213. Such allegation of future, possible harm only makes sense as Plaintiffs notably failed to allege any distinct encounter with the displays contemplated by S.B. 10. Lacking any encounter with the contemplated displays indicates Plaintiffs are merely bringing a facial challenge to S.B. 10. Yet, curiously, Plaintiffs conspicuously shy away from any claims based solely on the statutory language of S.B. 10. *Id. (*generally alleging that Plaintiffs *will* suffer various forms of harm if and when they encounter the displays).

Plaintiffs' failure to challenge the statutory text is likely due to the fact that "religious display cases do not provide a basis for standing the challenge the endorsement of beliefs that exist only in the text of a statute." *Barber,* 860 F.3d at 354. Allowing the Plaintiffs to proceed on such allegations without a more concrete "injury-in-fact" has previously been disallowed by the Supreme Court. *Id.* (citing *Valley Forge Christian Coll. V. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 483 (1982)). Plaintiffs' facial attack on S.B. 10 fails and conclusively affirms Plaintiffs' lack of standing.

---

[4] The Establishment Clause was enacted to protect *states* against *federal* establishments of religion. Indeed, several states retained formal religious establishments after the adoption of the Establishment Clause. Despite its origin as a state's rights clause, the Supreme Court incorporated the Establishment Clause against the states in *Everson v. Board of Education*, 330 U.S. 1 (1947) without offering any justification for doing so. Although Defendants recognize that this court is bound by that decision, Defendants reserve the right to argue for the disincorporation of the Establishment Clause before the United States Supreme Court. *See Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 74 (2019) (Thomas J., concurring in judgment) (arguing that "the Establishment Clause resists incorporation against the States." Defendants likewise reserve the right to argue that because the Establishment Clause was intended to protect states against federal encroachment, it does not create "rights, privileges, or immunities" in individuals that would entitle them to sue a state or state actor under Section 1983. *See Gonzaga University v. Doe*, 536 U. S. 273, 283 (2002).

Additionally, the Fifth Circuit has previously determined that "cases involving religious displays require an encounter with the offending item or action to confer standing." *Id.* at 353. As Plaintiffs' only "harm" "will be" allegedly inflicted at some later date, ECF 1, ¶¶ 123-127, 152-159, 196-202, and 208-213, if at all, seemingly invokes "offended observer standing;" yet, Plaintiffs cannot even satisfy the requirements to qualify as an "offended observer" because they have not observed any display contemplated by S.B. 10.[5] As the Fifth Circuit explained, "[t]he question" to satisfy offended observer standing is whether Plaintiffs "were exposed to, and may thus claim to have been injured by [S.B. 10]." *Doe v. Tangipahoa Par. Sch. Bd.,* 494 F.3d 494, 497 (5th Cir. 2007) (en banc). Here, Plaintiffs have yet to observe *any* display contemplated by S.B. 10 which is distinctly critical as the nature of the display matters as Justice Thomas has previously explained. *See Utah Highway Patrol Ass'n v. Am. Atheists, Inc.,* 565 U.S. 994 (2011) (Thomas, J., dissenting from denial of certiorari). As such, Plaintiffs have failed to plead a "concrete and particularized injury that is actual or imminent" as required by the Supreme Court. *See Lujan,* 504 U.S. at 560. Plaintiffs' Complaint is nothing more than an ideological or policy objection to government action which is insufficient to confer standing. *See FDA v. All. For Hippocratic Med.,* 602 U.S. 367, 381 (2024). The same is also true for Plaintiffs' Free Exercise claim as Plaintiffs do not know what, when, or even *if* there will actually be any displays or whether the Defendants may grant any requests for an opt-out.

---

[5] Defendants would urge that the Supreme Court, by overruling *Lemon v. Kurtzman,* 403 U.S. 602 (1971), has effectively overturned the doctrine of offended observer standing. *See Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507, 534-35 (2022). *See also, Am. Legion v. Am. Humanist Ass'n,* 588 U.S. 29, 79 (2019) (Gorsuch, J., concurring); *City of Ocala v. Rojas,* 598 U.S. ___, 143 S.Ct. 764 (2023) (Gorsuch, J., respecting the denial of certiorari) ("This Court has never endorsed the notion that an 'offended observer' may bring an Establishment Clause claim).

### 2.    Plaintiffs' alleged injury is not fairly traceable to the Defendants.

Without any injury-in-fact, Plaintiffs remain unable to show any "personal injury fairly traceable to the defendant's allegedly unlawful conduct." *Daves v. Dallas County*, 22 F.4th 522, 542 (5th Cir. 2022) (citing *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). Plaintiffs cannot make the requisite showing of a "line of causation between the illegal conduct and injury." *Allen v. Wright,* 468 U.S. 737, 752 (1984). Even if there was any link between causation and Plaintiffs' alleged injuries, that link "must not be too speculative or too attenuated." *See Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 410 (2013).

Despite its facial attack on S.B. 10, Plaintiffs attempt to spin an as applied challenge to the statute based on hypothetical, future injuries without any link to the conduct of the Defendants. Plaintiffs' attempt to treat all plaintiffs and defendants as a "unified whole" runs afoul of Supreme Court precedent. *See Murthy v. Missouri,* 603 U.S. 43, 61 (2024) (citing *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021) ("'[P]laintiffs must demonstrate standing for each claim that they press' against each defendant, 'and that each form of relief that they seek.'")).

Plaintiffs' allegations that "[b]y implementing S.B. 10, Defendants . . . *will* unavoidably violate Plaintiffs' rights" under both the Establishment Clause and Free Exercise Clause, ECF 1, ¶¶ 230, 239, fail to allege an ongoing or intended conduct by any Defendant. More specifically, there is no indication that any conduct of Defendants is more than "conjectural or hypothetical." *See Lujan,* 504 U.S. at 560. Not knowing whether any compliant displays will be privately donated or whether any individual schools (much less schools within the Districts named as Defendants herein) will use district funds to purchase complying displays, Plaintiffs' claims are "too speculative or otherwise too attenuated to establish standing." *FDA,* 602 U.S. at 390.

### 3.    Plaintiffs do not allege an injury redressable by the Defendants.

To satisfy standing's redressability requirement, a plaintiff must show that "it is *likely*, as opposed to merely *speculative*, that the injury will be redressed by a favorable decision." *Friends*

*of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (emphasis added). When determining redressability, the Court "consider[s] the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 593 U.S. 659, 671 (2021).

When a defendant has not harmed the plaintiff, "there is no injury for a federal court to redress." *Casillas v. Madison Ave. Assocs., Inc.,* 926 F.3d 329, 332 (7th Cir. 2019). So too here. As explained herein, there is no allegation that any Defendants, at least with respect to the districts that have yet to display the Ten Commandments, have taken any action to implement S.B. 10. Lacking same, Plaintiffs do not have any injury for this Court to address.

### B. Plaintiffs' claims are not ripe.

A claim is ripe, *i.e.*, "fit for judicial decision," if it presents a pure legal question requiring no further factual development. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586–87 (5th Cir. 1987). If a claim is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," the claim is unripe. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (citation omitted). When assessing ripeness, courts evaluate "(1) 'fitness of the issues for judicial decision[,]' and (2) 'the hardship to the parties of withholding consideration.'" *Braidwood Mgmt, Inc. v. Equal Emp. Opp. Comm'n,* 70 F.4th 914, 930 (5th Cir. 2023).

With respect to the first prong, a claim is "fit for judicial decision" or "ripe so long as it is not 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all.'" *Book People, Inc. v. Wong,* 91 F.4th 318, 333 (5th Cir. 2024). Here, Plaintiffs' claims are not ripe because any hypothetical injury of Plaintiffs remains contingent on future events that may not ever occur. *See*, *supra* I.A.1. While it remains to be determined whether any displays will be donated to Defendants or whether any school will use district funds to purchase displays in compliance with S.B. 10, the *Brumley* panel concluded that Plaintiffs' lawsuit targeting Louisiana's H.B. 71 reflecting "when, where and under what circumstance[s]" the Ten Commandments were to be

displayed was sufficient to satisfy the first prong of the analysis. *Id.* at 630. However, such determination has now been vacated. *Brumley,* 2025 WL 2856550, at *1.

While certainly some decisions have been made regarding a possible future display of the Ten Commandments, the uncertainty of whether any displays will be donated or purchased and how the displays will be displayed and contextualized prevents the requisite fact-intensive and context-specific analysis. *See Staley v. Harris County,* 485 F.3d 305, 309 (5th Cir. 2007); *but see, id.* Plaintiffs cannot satisfy the first prong.

Regarding the second prong, "[t]he Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences." *Choice Inc. of Texas v. Greenstein,* 691 F.3d 710, 715 (5th Cir. 2012) (quoting *Texas v. United States,* 497 F.3d 491, 499 (5th Cir. 2007). It remains undetermined if the Ten Commandments will actually be displayed since it is dependent upon factors that have yet to occur such as the donation of compliant displays or a decision by a school board to purchase displays.

Nor is it clear how the Ten Commandments will be displayed if a school district ultimately does receive or purchase compliant displays. While S.B.10 does state that *only* the text of the Ten Commandments may be on a display of the Ten Commandments, it does *not* specify what other displays or objects may surround the Ten Commandments. Individual school districts, schools, or teachers have the discretion to select how the Ten Commandments will be displayed.

To be clear, if Defendants are correct about the proper standard that this Court must apply to S.B.10, then a Ten Commandments display is not an establishment of religion even if standing alone without any other historical context, *infra* at pp. 11-22. But if Plaintiffs' proposed Establishment Clause test applies, then these details are crucial. It was based on precisely these kinds of details that the Supreme Court held that the Ten Commandments display outside of the

Texas Capital was Constitutional in *Van Orden* v. *Perry*, while invalidating the Ten Commandments display in another case. *McCreary Cnty., Ky. v. Am. C.L. Union of Ky.*, 545 U.S. 844, 877 (2005). Plaintiffs' claims are therefore poorly suited to a pre-enforcement facial challenge and "any claim that the Establishment Clause may be violated" in the future is "not ripe for review." *Staley,* 485 F.3d at 309.

*   *   *   *

Based on the foregoing reasons, Plaintiffs' facial challenge claims should be dismissed due to a lack of subject matter jurisdiction. Unless and until any display of the Ten Commandments in compliance with S.B. 10 is posted on a classroom wall, any ruling issued by this Court would be a "hypothetically-based ruling on issues of broad importance." *Doe,* 494 F.3d at 499. The Court should dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(1).

## II.    Plaintiffs' Claims Should be Dismissed under Rule 12(b)(6) for Failure to State a Claim.

Should the Court reach the merits of Plaintiffs' claims, such claims should also be dismissed due to Plaintiffs' failure to state a claim for relief under either the Establishment Clause or Free Exercise Clause.

### A. Plaintiffs failed to establish an Establishment Clause violation.

Plaintiffs' Complaint against Georgetown ISD, Fort Worth ISD, Rockwall ISD and Mansfield ISD can only be considered a facial attack on S.B. 10 since the Complaint does not, and cannot, attack any particular display of the Ten Commandments in compliance with S.B. 10. And, the distinction between a facial attack and an as-applied challenge is critical because "facial challenges are disfavored." *Moody v. NetChoice, LLC,* 603 U.S. 707, 744 (2024). In fact, the Supreme Court and Fifth Circuit have both explained that facial challenges are "the most difficult challenge to mount successfully," and that Plaintiffs must "establish that no set of circumstances exists under which [S.B.10] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Croft v. Perry,* 624 F.3d 157, 164 (5th Cir. 2010). *Croft v. Perry,* 624 F.3d 157, 164 (5th Cir. 2010).

In other words, Plaintiffs must show "[S.B. 10] to be unconstitutional in every application." *Croft*, 624 F.3d 164

In *Moody v. NetChoice, LLC,* 603 U.S. 707, 744 (2024), the Supreme Court recently reiterated that it has deliberately "made facial challenge hard to win." This is because "claims of facial invalidity often rest on speculation" about the law's coverage and future enforcement, and "facial challenges threaten to short circuit the democratic process" by preventing duly enacted laws from being implemented in constitutional ways." *Id.* at 723. (quoting *Washington State Grange v. Wash. State Rep. Party,* 552 U.S. 442, 450-51 (2008)). The Supreme Court has "lowered that very high bar" in free speech cases in order to "provide breathing room for free expression." *Id.* at 723. But in all "other cases," plaintiffs must satisfy *Salerno*'s "very high bar." This case does not fall under that narrow exception. Considering the almost limitless ways to constitutionally implement S.B.10 and the long-standing importance and role the Ten Commandments have played in this Nation's history, Plaintiffs simply cannot clear that "very high bar."

Some of Plaintiffs' claims are more properly considered an as applied challenge as Plaintiffs have alleged the Ten Commandments are actually being displayed in classrooms. More specifically, Plaintiffs allege the Ten Commandments are currently being displayed in schools within Comal ISD, Flour Bluff ISD, McKinney ISD, Frisco ISD, Northwest ISD, Azle ISD, Conroe ISD and Lovejoy ISD. Dkt. 1, ¶¶94, 96, 97, 100-105; *see also,* Dkt. 37. However, "[f]ew of our cases in the Establishment Clause area have explicitly distinguished between facial challenges to a statute and attacks on the statute as applied." *Bowen v. Kendrick,* 487 U.S. 589, 600 (1988). And, "[a]lthough the Court's opinions have not even adverted (to say nothing of explicitly delineated) the consequences of this distinction between 'on its face' and 'as applied' in this context, [t]here is . . . precedent in this area of constitutional law for distinguishing between the validity of the statute on its face and its validity in particular applications." *Id.* at 602.

When a challenger raises both facial and as applied challenges, courts first determine the validity of the statute as applied because "statutes should be construed whenever possible so as to uphold their constitutionality." *United States v. Vuitch,* 402 U.S. 62, 70 (1971). To establish an as-applied challenge, the challenger must show the application of the challenged statute on the facts of his case would violate his constitutional rights. *See United States v. Perez,* 43 F.4th 437, 443 (5th Cir. 2022). Notwithstanding Plaintiffs' lack of specific factual allegations regarding the various displays of the Ten Commandments, none of the displays violate Plaintiffs' constitutional rights. *See infra* at pp. 13-24.

### 1.    S.B. 10 does not Violate the Establishment Clause.

The Supreme Court has explained that courts, when interpreting the Establishment Clause, must do so by "reference to historical practices and understandings." *Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507, 535 (2022) (quoting *Town of Greece, N.Y. v. Galloway,* 572 U.S. 565, 576 (2014)). Analysis of whether a government practice violates the Establishment Clause proceeds in two steps.

First, the Court must inquire into whether the practice "was accepted by the Framers and has withstood the critical scrutiny of time and political change." *Town of Greece*, 572 U.S. at 577. If so, that is the end of the analysis and there is no Establishment Clause violation. This is because "[a] test that would sweep away what has so long been settled would create a new controversy and begin anew the very divisions along religious lines that the Establishment Clause seeks to prevent." *Id.* Accordingly, there is no need "to define the precise boundary of the Establishment Clause where history shows that the specific practice is permitted." *Id.*

If a practice does not have this kind of historic attestation, then the Court must inquire into whether the practice has "the hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." *Id.* at 537, n. 5 (citing *Shurtleff v. Boston,* 596 U.S. 243, 285-86 (2022) (Gorsuch, J., concurring). Justice Gorsuch has identified the following hallmarks:

1.  [T]he government exerted control over the doctrine and personnel of the established church;

2.  [T]he government mandated attendance in the established church and punished people for failing to participate;

3.  [T]he government punished dissenting churches and individuals for their religious exercise;

4.  [T]he government restricted political participation by dissenters;

5.  [T]he government provided financial support for the established church, often in a way that preferred the established denomination over other churches; and,

6.  [T]he government used the established church to carry out certain civil functions, often by giving the established church a monopoly over a specific function.

*Shurtleff,* 596 U.S. at 286 (Gorsuch, J., concurring). All of which "reflect forms of 'coerc[ion]' regarding 'religion or its exercise.'" *Id.*

S.B.10 is constitutional under either standard. As the report of Dr. Mark Hall establishes, history indicates long-standing public uses of the Ten Commandments, including in classrooms. *See* Ex. A, Dr. Hall Report. That is enough to vindicate S.B.10.

And even if that were not the case, a passive display of the Ten Commandments does not bear "the hallmarks of religious establishments" that concerned the founders as it lacks the level of coercion that founding era religious establishments all contained. S.B. 10 therefore does not violate the Establishment Clause. *Cf., Lee v. Weisman,* 505 U.S. 577, 584 (1992); *Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290, 316 (2000) (involving compulsory attendance or participation in religious exercises).

### 2.    History indicates long-standing uses of the Ten Commandments.

"Where categories of monuments, symbols, and practices with a longstanding history follow in that tradition, they are likewise constitutional." The *Am. Legion v. Am. Hum. Ass'n*, 588

U.S. 29, 63 (2019). This is the case even if the monuments and symbols have a religious character. Notably, in American Legion, the Court upheld the display of the Bladensburg Cross which, in the view of Justice Ginsburg, was the "defining symbol of Christianity." *Id.* at 94 (Ginsburg, J., dissenting).

When evaluating historical record evidence, the Fifth Circuit formulated the following test: Does the challenged practice "fit[] within" or is "consistent with broader tradition" at the time of the Founding or incorporation. *Freedom from Rel. Found. v. Mack,* 49 F.4th 941, 951(5th Cir. 2022). The public display of religious symbols, particularly the Ten Commandments fits well within that "broader tradition." Indeed, "[T]here is an unbroken history of official acknowledgement by all three branches of government" of the role of religion in American life from at least 1789." *See Van Orden,* 545 U.S. at 686, 688 (quoting *Lynch v. Donnelly,* 465 U.S. 668, 674 (1984)). This includes "acknowledgments of the role played by the Ten Commandments in our Nation's heritage." *Id.*

The display of the Ten Commandments on public property throughout this Nation is "deeply embedded in the history and tradition of this country." *Marsh v. Chambers,* 463 U.S. 783, 786 (1983). When upholding the constitutionality of the Ten Commandments monument at the Texas capitol, Chief Justice Rehnquist noted the "acknowledgements of the role played by the Ten Commandments in our Nation's heritage are common throughout America." *Van Orden,* 545 U.S. at 688. He then went on to list numerous other displays of the Ten Commandments on various public buildings in Washington, D.C. with some going as far back as 1897. *Id.* at 688-89. Further, an amicus brief by the United States in *Van Orden v. Perry* contains an appendix listing at least one display of the Ten Commandments on public property in forty-one states. *See* Brief of Amicus Curiae United States in Support of Respondents, 2005 WL 263790, at *1A-*7A, *Van Orden v. Perry,* 545 U.S. 677 (2005); *see also,* Hall & Picciotti-Bayer, *Ten Commandments in the Public Square and Public Schools,* William & Mary Bill of Rights J. 37-38 (forthcoming October 2025). And in his

report filed in the case of *Cave v. Thurston,* Dr. Hall included hundreds of examples of crosses, biblical language, Stars of David, and Ten Commandment monuments/displays on public property. *See* First Supp. Expert Report, ECF 260-3, *Cave v. Thurston,* No. 4:18-cv-342-KGB (E.D. Ark. Mar. 6, 2023); *see also,* Hall & Picciotti-Bayer, *Ten Commandments* at 34.

There is also a long history and tradition of teaching the Ten Commandments in public schools. "Indeed, one of the [] organic documents of the United States, the Northwest Ordinance of 1787, encouraged the teaching of religion in schools: 'Religion, morality and knowledge, being necessary to good government and happiness of mankind, schools and the means of education shall forever be encouraged.'" *Hilsenrath v. School Dist. of the Chathams,* 136 F.4th 484, 495 (3d Cir. 2025) (citing *An Ordinance for the Government of the Territory of the United States North-west of the River Ohio,* Act of July 13, 1787, art. III). While traditional public schools did not really exist until the 1820's, schools in New England utilized various editions of *The New England Primer* which included forty questions regarding the Ten Commandments. Ex. A at p. 22. In fact, "[e]ver since the mid-nineteenth century, [Americans] saw to it that the Ten Commandments were just about everywhere: in houses of worship and private homes, on the street, *in school,* in the subway, and even on the interstate." Jenna Weismann Joselit, *Set in Stone: America's Embrace of the Ten Commandments* 2 (2017) (emphasis added). The Ten Commandments have been a part of America's educational system since at least the colonial period.

### 3.    S.B. 10 does not bear any of the historic hallmarks of an establishment.

Displaying the Ten Commandments bears no resemblance to "the hallmarks of religious establishments" that the Court identified in *Kennedy.* 597 U.S. at 537 n.2. To the contrary, the public display of symbols with religious association and meaning was widespread and widely accepted as already discussed.

Displaying the Ten Commandments does not resemble "the hallmarks of religious establishments" for several reasons. In particular, the Ten Commandments has an "an undeniable

historical meaning" that is not diminished by the fact that the display "has religious content or promote[s] a message consistent with religious doctrine[.]" *Van Orden,* 545 U.S. at 690 (citing *Lynch,* 465 U.S. at 680, 687; *Marsh,* 463 U.S. at 792; *McGowan v. Maryland,* 366 U.S. 420, 437-440 (1961); *Walz v. Tax Comm'n of City of New York,* 397 U.S. 664, 676-78 (1970); *see also, ACLU Neb. Found. v. City of Plattsmouth, Neb.,* 419 F.3d 772, 778 (8th Cir. 2005).

The Establishment Clause does not "'compel the government to purge from the public sphere' anything an objective observer could reasonably infer endorses or 'partakes of the religious.'" *Kennedy,* 597 U.S. at 535. This is particularly true for displays that have historical and secular significance beyond or in addition to their religious meaning. As Justice Alito has explained, "the Ten Commandments . . . have historical significance as one of the foundations of our legal system, and for largely that reason, they are depicted in the marble frieze in our courtroom and on other prominent public buildings in our Nation's capital." *Am. Legion,* 588 U.S. at 53. Judge Daniel Manion similarly declared the Ten Commandments "served as the foundation for the formation of both English Common Law and Napoleonic Code, which together laid the foundation for American jurisprudence." *Books v. City of Elkhart, Ind.,* 235 F.3d 292, 312 (7th Cir. 2000).

Plaintiff's own expert has opined, "[i]t is axiomatic that many of the principles contained in the Ten Commandments are fundamental to the Western legal tradition . . . of which the American legal system is part." Steven K. Green, *The Fount of Everything Just and Right? The Ten Commandments as a Source of American Law,* 14 J.L. & Religion 525 (2000). Numerous other scholars agree. *See* John T. Noonan, *The Believer and the Powers That Are: Cases, History, and other Data Bearing on the Relation of Religion and Government* 4 (1987); Stephen Botein, *Early American Law and Society* 25 (1982); John W. Welch, *Biblical Law in America: Historical Perspectives and Potentials for Reform,* 2002 B.Y.U. L. Rev. 611, 619 (2002).

Given this deep historic pedigree, there is no reason to see the public display of the Ten Commandments as the establishment of a state religion. Even Justice Stevens acknowledged "a

carving of Moses holding the Ten Commandments, if that is the only adornment on a courtroom wall, conveys an equivocal message, perhaps of respect for Judaism, for religion in general, or for law. *Cnty. of Allegheny v. Am. Civ. Lib. Union,* 492 U.S. 573, 652 (1989) (Stevens, J., concurring in part and dissenting in part).

The legislative history here also supports the conclusion that the S.B.10 was motivated by goals other than religious indoctrination. The House Research Organization, a nonpartisan administrative department of the Texas House of Representatives, indicated that the background or reasoning behind S.B. 10 was for students to be made aware of the importance of the Ten Commandments as a foundation of American and state law.[6] Additionally, the Sponsor's Statement of Intent indicated "S.B. 10 will remind students all across Texas of the importance of a fundamental foundation of American and Texas law—the Ten Commandments." Bill Analysis, Senate Research Center, *Author's Statement of Intent,* S.B. 10 (June 3, 2025). Not only does S.B.10 not violate the Establishment Clause, but banning a passive display of the Ten Commandments would evince a hostility towards religion that the Supreme Court has clearly explained to be a violation of the Free Exercise Clause. *See Trinity Lutheran Church of Colum., Inc. v. Comer,* 582 U.S. 449, 467 (2017); *Espinoza v. Montana Dept. of Rev.,* 591 U.S. 464, 487 (2020); *Carson v. Makin,* 596 U.S. 767 (2022). Discussing the Bladensburg Cross, Justice Alito explained, "[a] government that roams the land, tearing down monuments with religious symbolism and scrubbing away reference to the divine will strike many as hostile to religion." *Am. Legion,* 588 U.S. at 56

Finally, Plaintiffs argue that the Ten Commandments display is a form of impermissible religious indoctrination because the version displayed was a "Protestant" version. This claim is inaccurate. The version of the Ten Commandments, like the version on the Texas Statehouse grounds previously ruled constitutional in *Van Orden v. Perry*, 545 U.S. 677 (2005), and in Arkansas's Act 573, is a non-sectarian version that was deliberately chosen because it is not readily

---

[6]    *See* House Research Organization, www.https://dro.house.texas.gov/bill-analysis?legislative=89&session=R&billNumber=SB0010 (last visited Oct. 10, 2025).

identifiable to any particular religious group. *See* Ex. A, Dr. Hall Report at 36. In fact, the United States Court of Appeals for the Eighth District found a monument with almost identical text contains "a nonsectarian version of the Ten Commandments." *ACLU Neb. Found,* 419 F.3d at 772. Here, Defendants have presented the testimony of Dr. Mark Hall who rebuts Mr. Green's accusations regarding the "Protestant" nature of Texas's Ten Commandments. *See generally,* Ex. A.

### 4.    S.B. 10 does not implicate any coercion.

All of the founding era hallmarks of an establishment of religion "reflect forms of 'coerc[ion]' regarding 'religion or its exercise.'" *Shurtleff,* 596 U.S. at 286 (Gorsuch, J., concurring). Indeed, "The *sine qua non* of an establishment of religion is actual legal coercion." *Am. Legion*, 588 U.S. at 75 (Thomas J., concurring in judgment). By contrast, the passive display of the Ten Commandments in public spaces lacks any element of coercion and therefore is dramatically different from "mandated church attendance" or any of the other founding era hallmarks. *Id.*

Plaintiffs continuously allege that posting the Ten Commandments *will* "coerce the minor child Plaintiffs by pressuring them to observe, meditate on, venerate, and follow the state's favored religious text." ECF 1, ¶¶ 123-127, 131, 152-159, 196-202, and 208-213. Yet, S.B. 10 contains no language requiring any action on the part of the minor Plaintiffs. S.B. 10 does not require that any future displays be read, discussed or otherwise incorporated into any specific activity within the classroom. Lacking any active participation requirement, this case "looks very different from those in which [the Supreme] Court has found prayer" and devotional Bible reading "involving public school students" to be problematically coercive. *Kennedy,* 597 U.S. at 541; *Schempp,* 374 U.S. at 206-07 (holding unconstitutional school-directed prayer and Bible reading at the beginning of each day). Coercion under an Establishment Clause question is simply whether a person is forced to participate in a religious activity. That is not the case here.

Reviewing a West Virginia law that required students to salute and pledge allegiance to the American flag, including punishments for those who did not, Justice Jackson declared, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion or other matters of opinion, or force citizens to confess by word or act their faith therein." *West Virginia v. Barnette,* 319 U.S. 624, 629 (1943). In other words, West Virginia could not require students to *act* against their religious convictions. Such is the difference between coercion and exposure—a distinction reinforced by all of the Justices' opinions in *Mahmoud v. Taylor,* 606 U.S. ___, 145 S.Ct. 2332 (2025).

At most, Plaintiffs' complaint is simply that they disagree with the Ten Commandments or may be offended by some future display; however, "offense does not equate to coercion." *Kennedy,* 597 U.S. at 539 (cleaned up). Furthermore, since S.B. 10 does not require *any* activity, "any speculation as to whether students might feel pressured to participate is irrelevant." *Doe v. Beaumont Indep. Sch. Dist.,* 240 F.3d 462, 470 (5th Cir. 2001) (en banc). Not a single member of the Supreme Court in *Van Orden* or *McCreary* found the Supreme Court's frieze of the Ten Commandments unconstitutional even though advocates are required to attend the court to present their case and answer question from the Justices at oral argument. Similarly, there is no constitutional violation here. *See Am. Legion,* 588 U.S. at 53.

### 5.    *Stone* cannot be considered good law.

Plaintiffs' reliance upon *Stone v. Graham* is, respectfully, wrong. There is simply no doubt that the Supreme Court has wholly disavowed any reliance upon the *Lemon* test upon which the Court in *Stone* relied. "As to the Court's invocation of the *Lemon* test: Like some ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad, after being repeatedly killed and buried, . . . no fewer than five of the currently sitting Justices have, in their own opinions, personally driven pencils through the creature's heart, and a sixth has joined an opinion in doing so." *Lamb's Chapel v. Center Moriches Union Free School Dist.,* 508 U.S. 384, 398 (1993) (collecting

cases omitted) (Scalia, A., concurring) (cleaned up). Finally, in 2022, the Supreme Court finally laid the *Lemon* test to rest indicating "this Court long ago abandoned *Lemon* and its endorsement test offshoot." *Kennedy,* 597 U.S. at 534. In the event there was any remaining confusion, Justice Sotomayor indicated, "[t]he Court overrules *Lemon v. Kurtzman,* 403 U.S. 602 (1971), and calls into question decades of subsequent precedents that it deems 'offshoot[s] of that decision.'" *Id.* at 547 (Sotomayor, S., dissenting).

Relying on the *Lemon* test, the *Stone* court determined that Kentucky's statute requiring the posting of the Ten Commandments in public school classrooms was unconstitutional. *See Stone,* 449 U.S. at 42-43 ("We conclude that [the Kentucky statute] violates the first part of the *Lemon v. Kurtzman* test, and thus the Establishment clause of the Constitution."). Since *Lemon* has been overruled, *Stone* simply cannot stand.

Because the Supreme Court overruled *Lemon* and immolated the precise analytical basis upon which *Stone* was decided, *Stone* cannot be considered good law. By overruling *Lemon*, the Court has effectively overruled its cases that relied on the *Lemon* test. This Court must instead follow the Court's binding and still viable decisions in *Town of Greece*, *American Legion*, and *Kennedy* which set out the historical approach. While ordinarily lower courts leave the overruling of Supreme Court decisions to the Supreme Court itself, *see Agostini v. Felton,* 521 U.S. 203, 237 (1997), that is exactly what the Supreme Court has done. At the very least, any analysis of the Establishment Clause must be undertaken through a different lens—one which relies upon a historical understanding.

*    *    *    *    *

Finally, even if *Stone* remains controlling law, *Van Orden* demonstrates that the validity of a Ten Commandments display depends on fact specific circumstances that cannot be assessed given that not a single one of the Defendant schools has actually displayed the Ten Commandments. *Van Orden,* 545 U.S. at 686. Plaintiffs therefore simply cannot show that there is

"no set of circumstances" under which S.B. 10 could be constitutionally implemented. *Croft,* 624 F.3d at 164. Recognizing the "high bar" for Plaintiffs to clear when bringing a facial challenge, there is a reason the Supreme Court made such challenges "hard to win." *Moody,* 603 U.S. at 723. Plaintiffs have failed to carry their heavy burden.

### B.  Plaintiffs failed to establish a Free Exercise violation.

Plaintiffs also claim that any hypothetical displays in compliance with S.B. 10 "will burden the religious exercise of the minor-child Plaintiffs by pressuring them into observance, meditation on, veneration, and adoption of the state's favored religious scripture" violates the Free Exercise Clause of the First Amendment. ECF 1, ¶234. However, the Free Exercise Clause only protects an individual's religious *exercise*—professing or otherwise engaging in "conduct motivated by religious belief." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 543 (1993). Nor does the Free Exercise Clause obligate a State to "comport with the religious beliefs or particular citizens," or "demand[s] that the Government join in [their] chosen religious practices." *Bowen v. Roy,* 476 U.S. 693, 699-700 (1986). S.B. 10 comes nowhere near implicating the *exercise,* or prohibition thereof, of any religious activity.

The Free Exercise Clause protects against "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson,* 596 U.S. at 778. But, Justice Kennedy explained, the government "do[es] not engage in impermissible coercion merely by exposing constituents to [something] they would rather not hear and in which they need not participate." *Town of Greece,* 572 U.S. at 590. The same is true here. While Plaintiffs claim any S.B. 10 display will make the minor Plaintiffs feel "pressured" to think a certain way, (Dkt. 1, ¶¶ 112, 118, 120, 125, 131, 148, 157, 172, 178, 185, 191, 199, 205, and 212), "[i]f no religious *activity* is at issue, any speculation was to whether students might feel pressured to participate is irrelevant." *Beaumont Indep. Sch. Dist.,* 240 F. 3d at 470 (emphasis added).  Recognizing that both *Town of Greece* and *Beaumont* were Establishment Clause cases, the Supreme Court has recognized that the

Establishment and Free Exercise Clauses "may in certain instances overlap." *Schempp,* 374 U.S. at 221. Nevertheless, "a violation of the Free Exercise Clause is predicated on coercion," and there is none here. *Schempp,* 374 U.S. at 223.

   *Mahmoud* does not change the analysis or support Plaintiffs' claims. *Mahmoud,* 606 U.S. ___, 145 S.Ct. 2332 (2025); *compare,* ECF 1, ¶ 237. *Mahmoud* was a Free Exercise claim wherein the Court determined parents could opt out of objected-to curriculum materials including "instruction related to" "LGBTQ+-inclusive storybooks." But there are several significant outcome determinative differences between this case and *Mahmoud*.

   First, in *Mahmoud* parents were required "to submit their children to instruction that poses a very real threat of undermining the religious beliefs and practices and the parents wish to instill." *Mahmoud,* 145 S.Ct. at 2342. As a result, the injury had "the same character as the burden in the same character as the burden in *Yoder*" and was subject to strict scrutiny. *Id.* at 2361. By contrast, S.B. 10 requires no instruction or otherwise require teachers to discuss or even acknowledge the displays, if any. Neither *Mahmoud* nor any other case relied on by Plaintiffs supports the conclusion that the government's passive display of speech burdens an individual's free exercise rights or imposes "impermissible coercion." *Town of Greece,* 572 U.S. at 590. And any harm from merely being exposed to the Ten Commandments displayed in the classroom is decidedly not "in the same character as the burden in *Yoder.*"

   Second, because the Court in *Mahmoud* found that the injury was akin to the injury in *Yoder*, it applied strict scrutiny without asking whether the school's policy was "not neutral or generally applicable." Here, by contrast, this Court must ask that question and conclude that the school's policy is "neutral and generally applicable." Plaintiffs are unable to show that S.B. 10 is "intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021) (citing *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U.S. 617, 636-40 (2018)). S.B. 10 cannot possibly "restrict practices because of their

religious nature" because S.B. 10 doesn't restrict anything. *Id.* Nor can S.B. 10 be considered "intolerant of religious beliefs" in light of the fact that the text required by S.B. 10 resulted from "consultation with a committee composed of members of several faiths" in an effort to "find a nonsectarian text." *Van Orden*, 545 U.S. at 701. S.B. 10 likewise does not single out students with religious objections to the Ten Commandments for disfavorable treatment. *Fulton*, 593 U.S. at 533. Instead, the law even handedly required the placement of the Ten Commandments in all classrooms regardless of student religious belief or conviction. Likewise, the law does not provide an exemption or opt out for students with secular or other objections to the Ten Commandments. Accordingly, rational basis rather than strict scrutiny applies, and educating students about the historic role that the Ten Commandments has played in our nation's history and tradition clearly satisfies rational basis scrutiny.

Finally, there is a major difference in the nature of the requested remedies. In *Mahmoud* the challenge involved a school policy denying students with religious objects the right to opt out of the curriculum. While the Court protected the parents "specific religious beliefs and practices," it did not require removal of the materials from the curriculum. *Mahmoud,* 145 S.Ct. at 2364. Therefore, even if S.B.10 impermissibly burdened the free exercise rights of Plaintiffs, the correct remedy would be to allow those students to opt-out such as by not displaying the Ten Commandments in classrooms when they are present, not the complete prohibition of the displays throughout the Defendant school districts.

### III.    Plaintiffs' Motion for Preliminary Injunction Should be Denied.

In the event the Court dismisses Plaintiffs' Complaint for a lack of subject matter jurisdiction or failure to state a claim, then the Court should dismiss Plaintiff's Motion for Preliminary Injunction as moot; however, should the Court decide to address the merits of Plaintiffs' Motion for Preliminary Injunction, any relief requested thereunder should also be

denied as Plaintiffs cannot satisfy the requirements for "extraordinary" relief. *See Canal Auth. of Fla. v. Callaway,* 489 F.2d 567, 576 (5th Cir. 1974).

"Preliminary injunctive relief is 'an extraordinary remedy, not available unless the plaintiff carries his burden of persuasion as to all of the four prerequisites." *Id.* Plaintiffs must establish "(1) a 'substantial likelihood that they will prevail on the merits,' (2) a 'substantial threat that they will suffer irreparable injury if the injunction is not granted,' (3) 'that their substantial injury outweighs the threatened harm to the party whom they seek to enjoin' and (4) that 'granting the preliminary injunction will not disserve the public interest." *City of El Cenizo v. Texas,* 890 F.3d 164, 176 (5th Cir. 2018) (quoting *Tex. Med. Providers Perf. Abortion Servs. v. Lakey,* 667 F.3d 570, 574 (5th Cir. 2012)). For many of the same reasons explained more fully herein, Plaintiffs are unable to carry their burden on any of the four prerequisites.

First, for the long litany of reasons discussed herein, some Plaintiffs are not likely to prevail on the merits considering the jurisdictional hurdles and inability to state a claim upon which relief can be granted. Since none of the Defendants have taken any action to implement S.B. 10, any alleged injury of Plaintiffs is purely hypothetical which is why the Supreme Court has specifically made facial challenges "hard to win." *Moody,* 603 U.S. 723. And, in the unlikely event the Court reaches the merits of Plaintiffs' claims, Defendants have shown S.B. 10 to be independently constitutional under the long-standing historical significance of the Ten Commandments in our Nation's history.

Second, for the reasons set forth herein, *supra* at pp. 5-24, showing a lack of standing, ripeness and failure to state a claim, some Plaintiffs cannot plausibly allege any imminent irreparable injury. Plaintiffs' inability to allege any imminent harm rests on the fact that nobody— neither Plaintiffs nor Defendants—know how, when, or even *if,* any S.B. 10 compliant displays may be posted within any of the classrooms of the Defendants. While this fact alone is fatal to the to the jurisdictional analysis, it further highlights Plaintiffs' inability to show any imminent harm.

Nor does the fact that some Plaintiffs bring an as-applied challenge change the analysis as S.B. 10 should be considered constitutional.

Third, any hypothetical injury that may be suffered by Plaintiffs cannot outweigh the threatened harm to the Defendants whom Plaintiffs seek to enjoin. In fact, the balancing of interests favors the State of Texas and Defendants herein. "When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws. *E.T. v. Paxton,* 19 F.4th 760, 770 (5th Cir. 2021). Any further balancing of equities is simply incapable of determination due to the uncertainty of whether any private donors intend to donate displays of the Ten Commandments in compliance with S.B. 10. Considering the irreparable harm to the State, Plaintiffs cannot satisfy the third requirement.

"The decision to grant [preliminary injunctive relief] 'is to be treated as the exception rather than the rule.'" *Jones v. Bush,* 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir. 1985)). Plaintiffs' have failed to proffer any reason why the Court should treat this case as "the exception," and Plaintiff's Motion for Preliminary Injunction should be denied. At most, Plaintiffs should only be entitled to be "notified in advance" in the event an S.B. 10 compliant display is to be used in the classroom and allowed to have their children "excused from that instruction." *See Mahmoud,* 145 S.Ct. at 2364. Plaintiffs have no right to seek a broader ban of the displays for all students.

Finally, should the Court conclude that Plaintiffs are entitled to a preliminary injunction, the relief Plaintiffs seek is far too broad. Plaintiffs ask for "a preliminary injunction restraining Defendants from implementing the Act pending a final decision in this case." Plaintiffs do not include a proposed order that spells out exactly what this Court should enjoin. But their request for relief resembles the kind of overly broad injunction that the Supreme Court recently repudiated in *Trump v. CASA*, *Inc.,* No. 24A884, 2025 WL 1773631, at *8 (U.S. June 27, 2025). Presumably, Plaintiffs' position remains the same as articulated in *Nathan* and any potential injunction should

only apply to the named districts herein. As the Supreme Court explained, this court's equitable authority is limited to "provid[ing] complete relief to each plaintiff with standing to sue." *Id.,* at *15. Any preliminary injunction regarding the Establishment Clause should not extend beyond the specific schools that Plaintiffs' children attend, and any injunction concerning the free exercise clause should not extend beyond allowing Plaintiffs' children to opt-out of viewing the displays. Anything broader than this would improperly intrude on "a coordinate branch of the Government" causing irreparable harm. *Id.,* at *14.

**PRAYER**

Defendants respectfully request the Court grant Defendants' Motion to Dismiss and deny Plaintiffs' Motion for Preliminary Injunction. Defendants further pray for any additional relief, both at law and equity, to which Defendants may show themselves to be justly entitled.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ William H. Farrell
**WILLIAM H. FARRELL**
Assistant Attorney General
Texas Bar No. 00796531
biff.farrell@oag.texas.gov
(512) 979-5561 | FAX: (512) 320-0667

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 463-2120
Fax: (512) 320-0667

COUNSEL FOR DEFENDANTS,
FORT WORTH INDEPENDENT SCHOOL DISTRICT,
NORTHWEST INDEPENDENT SCHOOL DISTRICT,
LOVEJOY INDEPENDENT SCHOOL DISTRICT,
MCKINNEY INDEPENDENT SCHOOL DISTRICT,
FRISCO INDEPENDENT SCHOOL DISTRICT,
GEORGETOWN INDEPENDENT SCHOOL DISTRICT,
ROCKWALL INDEPENDENT SCHOOL DISTRICT,
FLOUR BLUFF INDEPENDENT SCHOOL DISTRICT,
COMAL INDEPENDENT SCHOOL DISTRICT, AZLE
INDEPENDENT SCHOOL DISTRICT, CONROE
INDEPENDENT SCHOOL DISTRICT AND
MANSFIELD INDEPENDENT SCHOOL DISTRICT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via E-File Texas, File and Serve Texas on this October 20, 2025, on all counsel of record.

/s/ William H. Farrell
**WILLIAM H. FARRELL**
Assistant Attorney General

## CERTIFICATE OF CONFERENCE

In compliance with Standing Order I.A., I hereby certify that I have conferred with opposing counsel regarding the foregoing Motion to Dismiss and Response to Plaintiffs' Motion for Preliminary Injunction, and Plaintiffs' counsel has indicated that he is opposed to the relief sought by Defendants herein.

/s/ William H. Farrell
**WILLIAM H. FARRELL**
Assistant Attorney General