**FILED**
November 18, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____NM_____
         DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ROXANNE CRIBBS RINGER, on behalf of herself and on behalf of her minor child, E.R. *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COMAL INDEPENDENT SCHOOL DISTRICT *et al.*,<br><br>Defendants. | CIVIL NO. SA-25-CV-1181-OLG |

## ORDER

Pending before the Court are Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction (the "Motion for Preliminary Injunction") (Dkt. No. 4) and Defendants'[1] Motion to Dismiss and Response in Opposition to Plaintiffs' Motion for Preliminary Injunction (the "Motion to Dismiss") (Dkt. No. 42). For the reasons that follow, the Motion to Dismiss (Dkt. No. 42) is **DENIED**, and the Motion for Preliminary Injunction (Dkt. No. 4) is **GRANTED**.

### I. BACKGROUND

This case concerns the constitutionality of a recently enacted Texas law, Senate Bill No. 10 ("S.B. 10"). S.B. 10 requires public schools to "display in a conspicuous place in each classroom of the school a durable poster or framed copy of the Ten Commandments." TEX. EDUC. CODE ANN. § 1.0041(a). S.B. 10 also regulates the content, size, typeface, and readability of such displays. Specifically, S.B. 10 provides that the text of the Ten Commandments must be written "in a size

---

[1] Defendants were originally comprised of fourteen independent school districts ("ISDs"). However, two of these ISDs, Arlington ISD and McAllen ISD, did "not wish to actively participate . . . in this proceeding." Dkt. Nos. 48 at 2; 49 at 2. Instead, they have agreed to be bound by "any rulings entered by this Court in this case regarding the constitutionality of S.B. 10, including any injunction that this Court may enter." Dkt. Nos. 48 at 2; 49 at 2.

and typeface that is legible to a person with average vision from anywhere in the classroom," and that the displays must "be at least 16 inches wide and 20 inches tall." *Id.* § 1.0041(b).

Plaintiffs are the parents of public-school children. They come from a variety of religious backgrounds, including atheist, agnostic, Christian, Jewish, Baha'i, and Hindu, but they share one thing in common: Plaintiffs do not wish their children to be pressured to observe, venerate, or adopt the religious doctrine contained in the Ten Commandments. *See* Dkt. No. 4-4 at 3, 7, 12, 16, 21, 25, 30, 34, 38, 44, 48, 52, 56, 60, 66, 72, 77–78, 86. Defendants are comprised of ISDs overseeing the public schools where Plaintiffs' children attend classes. They have purchased or taken steps to acquire copies of the Ten Commandments, and most have begun erecting displays in classrooms across their respective districts. *See* Dkt. Nos. 4-4 at 2, 6, 11, 15, 20, 24, 29, 33, 37, 43, 47, 51, 55, 59, 65, 71, 77, 85; 37 at 1; 37-1 at 2; 66-1; 66-2.

On September 22, 2025, Plaintiffs initiated this action. They assert a facial challenge to S.B. 10 on the grounds that it violates the Establishment Clause of the First Amendment, as made applicable to the states through the Fourteenth Amendment. *See* Dkt. No. 1 at 61–62.[2] The following day, Plaintiffs filed the Motion for Preliminary Injunction. *See* Dkt. No. 4. On October 20, 2025, Defendants filed the Motion to Dismiss and responded to the Motion for Preliminary Injunction. *See* Dkt. No. 42. On October 27, 2025, Plaintiffs filed a reply in support of the Motion for Preliminary Injunction and response in opposition to the Motion to Dismiss. *See* Dkt. No. 52. On November 5, 2025, the Court held an evidentiary hearing on the Motions. *See* Dkt. Nos. 62; 67. This Order follows.

---

[2] Plaintiffs also assert that S.B. 10 violates the Free Exercise Clause. *See* Dkt. No. 1 at 63–64. The Court declines to reach that claim in this Order.

## II. ANALYSIS

The Motion to Dismiss raises two jurisdictional issues: Plaintiffs' standing and the ripeness of their Establishment Clause claim. *See* Dkt. No. 42. Accordingly, the Court begins with the Motion to Dismiss and then turns to the Motion for Preliminary Injunction. *See Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958 (5th Cir. 2024) ("As always, jurisdiction first.").

### A.  Motion to Dismiss

#### 1.  Standing

Defendants argue that Plaintiffs lack standing because their injuries are purely hypothetical. Dkt. No. 42 at 16. According to Defendants, Plaintiffs have not yet encountered any religious displays. *Id.* Plaintiffs disagree. They argue that most of their children have, in fact, encountered the displays. *See* Dkt. No. 52 at 16–17. Furthermore, Plaintiffs argue that those who have not soon will; that is, any ISDs who have not yet erected the displays "will soon put the displays in classrooms." *Id.* at 18. Plaintiffs provide undisputed evidence in support thereof. *See* Dkt. No. 4-4 at 11, 77, 81–82; Pls.' Ex. 21-AO.[3] The Court agrees with Plaintiffs.

The "judicial Power" of federal courts is limited to "Cases" or "Controversies." U.S. CONST. art. III, § 2, cl. 1. "The doctrine of standing flows from this constitutional limitation and is an essential aspect of it." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015) (citations omitted). The party invoking the Court's jurisdiction bears the burden of establishing standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). To do so, that party must demonstrate an injury, which is

---

[3] Defendants objected to the introduction of Plaintiffs' Exhibit 21-AO on the grounds that it contains hearsay. *See* Dkt. Nos. 55 at 3; 67 at 47–48. While that may be true, "at the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence." *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) (citing *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558–59 (5th Cir. 1987)). Accordingly, Defendants' objection is **OVERRULED**.

"concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Inst. for Free Speech v. Johnson*, 148 F.4th 318, 327 (5th Cir. 2025) (citation modified).

The Court begins with the injury-in-fact element. Most of Plaintiffs' children have been (and will continue to be) subjected to unwelcome religious displays "nearly every hour of the school day." *See, e.g.*, Dkt. No. 4-4 at 7. Indeed, S.B. 10 makes it impossible for their children to avoid the displays. *See* TEX. EDUC. CODE ANN. § 1.0041(b) (requiring the text to be written "in a size and typeface that is legible to a person with average vision from anywhere in the classroom"). There is no question that these Plaintiffs have suffered constitutionally sufficient injuries. *See Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 224 n.9 (1963) ("It goes without saying that the laws and practices involved here can be challenged only by persons having standing to complain. . . . The parties here are school children and their parents, who are directly affected by the laws and practices against which their complaints are directed. These interests surely suffice to give the parties standing to complain."); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 n.22 (1982) ("The plaintiffs in *Schempp* had standing . . . because impressionable schoolchildren were subjected to unwelcome religious exercises . . . .").

However, a small minority of Plaintiffs have not yet encountered the displays. *See* Dkt. No. 4-4 at 11; 77. Defendants seize upon this point. According to Defendants, "cases involving religious displays require an encounter with the offending item . . . to confer standing." *See* Dkt. No. 42 at 17. In support thereof, Defendants primarily rely upon *Doe v. Tangipahoa Parish School Board*, 494 F.3d 494 (5th Cir. 2007) (en banc), and *Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017). These cases are distinguishable.

4

*Doe* is a school prayer case. The school board had a practice of opening its meetings with prayer. *See Doe*, 494 F.3d at 498. The father of multiple schoolchildren objected to that prayer on the grounds that it violated the Establishment Clause. *See id* at 497. Agreeing with the father, the district court permanently enjoined the board from opening its meetings with prayer. But there was no evidence that the father or his children ever attended a school board meeting and, thus, no indication that they suffered an injury other than "mere abstract knowledge that [the] invocations were said." *Id.* Without any evidence of an actual or threatened injury, the father lacked standing. The present case is altogether different.

Plaintiffs' children attend public school. While the religious displays have not yet been erected in all their classrooms, they will be completed soon. *See* Dkt. No. 4-4 at 11, 77, 81–82; Pls.' Ex. 21-AO. Defendants assert that there is no way to know whether the displays will ever be completed. *See* Dkt. No. 42 at 18. But that conflicts with the undisputed evidence cited above. Furthermore, Defendants have a strong incentive to comply with S.B. 10 as quickly as possible. Texas has threatened to take "legal action" against ISDs who are "not in compliance." *See* Dkt. No. 66-3 at 45–46. In fact, Texas recently sued Galveston ISD and its board of trustees due to their "failure to display the Ten Commandments." *See* [Original Petition](...) at 5. For all these reasons, Plaintiffs' injuries are actual or imminent—unlike the injuries at issue in *Doe*.

*Barber* is similarly inapposite. That case dealt with a Mississippi law which prohibited the state from taking any "discriminatory action" against persons holding certain "religious beliefs or moral convictions." *Barber*, 860 F.3d at 350–51. The plaintiffs were Mississippi residents who did not share those beliefs or convictions. *Id.* at 351. They sued state officials to enjoin the implementation of the law. *Id.* at 351–52. According to the plaintiffs, the statute violated the Establishment Clause by sending a message that Mississippi disapproved of certain lifestyles. *Id.*

5

at 352. As in *Doe*, there was no indication that the plaintiffs suffered any actual or imminent harm. The plaintiffs analogized their injuries to those suffered in the religious display context. *See id.* at 354. But the plaintiffs had not—and, in fact, could not—confront the text of a statute. *Id.* That is, there was no religious display to cause the alleged harm. Once again, the present case is quite different. Plaintiffs have confronted or soon will confront the displays of the Ten Commandments in their public school classrooms. *See* Dkt. Nos. 4-4 at 2, 6, 11, 15, 20, 24, 29, 33, 37, 43, 47, 51, 55, 59, 65, 71, 77, 85; 37 at 1; 37-1 at 2; 66-1; 66-2. That much is not meaningfully disputed by Defendants.

The traceability and redressability prongs are far easier. Defendants have erected the challenged displays in classrooms across their districts or, at the very minimum, plan to do so soon. Therefore, Plaintiffs' injuries are fairly traceable to Defendants' actions. And those injuries would be rectified if the Court were to enjoin Defendants from displaying the Ten Commandments. Because Plaintiffs have suffered actual or imminent injuries, which are fairly traceable to Defendants' actions and redressable by a favorable ruling, they have standing. *See Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 278 (5th Cir. 1996) ("There is no need for Ingebretsen to wait for actual implementation of the statute and actual violations of his rights under the First Amendment where the statute 'makes inappropriate government involvement in religious affairs inevitable.'" (quoting *Karen B. v. Treen*, 653 F.2d 897, 902 (5th Cir. 1981))).

### 2.  **Ripeness**

Defendants also argue that Plaintiffs' Establishment Clause claim is not ripe for review. According to Defendants, their claim is "contingent on future events" which may or may not come to pass. *See* Dkt. No. 42 at 19–20. Even if all the ISDs eventually complete the displays, Defendants assert that it is unclear how they "will be displayed and contextualized." *Id.* at 20.

Once again, Plaintiffs disagree. They argue that most of Defendants "have, in fact, posted Ten Commandments displays in classrooms." *See* Dkt. No. 52 at 24. Even though a small minority have not, Plaintiffs assert that S.B. 10 carefully regulates the appearance of the displays. *See id.* at 25. According to Plaintiffs, these "rigid requirements" provide "sufficient details about how the Ten Commandments must be displayed." *Id.*

"Ripeness has both constitutional and prudential dimensions." *Umphress v. Hall*, 133 F.4th 455, 467 (5th Cir. 2025) (citing *DM Arbor Ct., Ltd v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021)). "The ripeness inquiry involves '(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'" *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 91 (5th Cir. 2011) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). Generally, "a case is ripe if it presents questions of law; 'conversely, a case is not ripe if further factual development is required.'" *NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306, 316 (5th Cir. 2022) (quoting *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012)). Facial challenges are presumptively ripe. This is so because a facial challenge—which "asserts that a law *always* operates unconstitutionally"—is "purely legal" and "does not require a developed factual record." *See Whole Woman's Health v. Cole*, 790 F.3d 563, 591 (5th Cir. 2015) (emphasis in original) (quoting *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009)), *rev'd on other grounds sub nom. Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016).

Plaintiffs bring a facial challenge to S.B. 10 on the grounds that it violates the Establishment Clause. Their claim does not require any factual development. S.B. 10 is facially unconstitutional or it is not. Furthermore, Plaintiffs will suffer hardship if the Court withholds its consideration of these important issues. Plaintiffs' children have been or soon will be subjected to

unwelcome religious displays. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Accordingly, their claim is ripe for review. Plaintiffs need not wait until all their children's First Amendment rights have been violated to establish a justiciable controversy. *See Ingebretsen*, 88 F.3d at 278.

In reaching the opposite conclusion, Defendants rely upon *Staley v. Harris County*, 485 F.3d 305 (5th Cir. 2007) (en banc). Their reliance is misplaced. In *Staley*, Harris County erected a courthouse monument to honor a local philanthropist. *Id.* at 307. The monument included a "display of the Bible." *Id.* The district court ordered the Bible removed. *Id.* Initially, the Fifth Circuit affirmed. *Id.* But it later granted en banc review and vacated the panel opinion. *Id.* Before oral argument, the Fifth Circuit learned that the courthouse "had closed for renovations and would likely remain closed for a few years." *Id.* Because the disputed monument was no longer on display, the Fifth Circuit held that the appeal was moot. *Id.* at 309. The court also held that "any dispute over a probable redisplay of the . . . monument [was] not ripe because there [were] no facts . . . to determine whether such a redisplay [would] violate the Establishment Clause." *Id.* That is, Harris County had not yet made any decision "regarding any aspect of the future display of the monument." *Id.*

The present case is unlike *Staley*. The displays at issue here have already been erected in most classrooms, and the remaining displays will be completed soon. *See* Dkt. Nos. 4-4 at 2, 6, 11, 15, 20, 24, 29, 33, 37, 43, 47, 51, 55, 59, 65, 71, 77, 85; 37 at 1; 37-1 at 2; 66-1; 66-2. Furthermore, all the displays are nearly identical. *See* Dkt. Nos. 37-1 at 2; 52-2 at 97; 66-1 at 4, 6–7; 66-2 at 5, 9, 11, 13. S.B. 10 requires as much. *See* TEX. EDUC. CODE ANN. § 1.0041(a)–(b) (regulating the location, size, typeface, and content of the displays). Because the contents of the displays are

statutorily prescribed, the Court has sufficient information to determine whether they violate the Establishment Clause.

**B.    Motion for Preliminary Injunction**

A preliminary injunction is an "extraordinary remedy" requiring the movants to "unequivocally show the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997) (citing *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989)). To obtain such relief, the movants must demonstrate: "(1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) their substantial injury outweighs the threatened harm to the party to be enjoined; and (4) granting the preliminary injunction will not disserve the public interest." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (quoting *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)).

Plaintiffs request preliminary injunctive relief. *See* Dkt. No. 4. They ask the Court to enjoin Defendants from "complying with S.B. 10 by displaying the Ten Commandments in public classrooms and requiring all Defendants to immediately remove any S.B. 10 displays currently posted." *Id.* at 25. According to Plaintiffs, this is a simple case. They assert that it is controlled by *Stone v. Graham*, 449 U.S. 39 (1980) (per curiam). *See* Dkt. No. 4 at 9–11. Defendants disagree. They argue that *Stone* is no longer good law. *See* Dkt. No. 42 at 31. The Court agrees with Plaintiffs. In reaching this conclusion, the Court begins with a brief history of Establishment Clause jurisprudence and then turns to the merits of Plaintiffs' request.

The Establishment Clause prohibits the making of any "law respecting an establishment of religion." U.S. CONST. amend. I. Early Supreme Court cases applied a variety of different Establishment Clause tests. *Compare Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 222

(1963) ("[T]o withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion."), *with Walz v. Tax Comm'n of City of N.Y.*, 397 U.S. 664, 674 (1970) ("We must also be sure that the end result—the effect—is not an excessive government entanglement with religion."). In *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the Supreme Court "ambitiously attempted to find a grand unified theory of the Establishment Clause." *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 60 (2019). To that end, *Lemon* established a three-part test: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion." *Lemon*, 403 U.S. at 612–13 (citation modified).

Several years later, in *Stone*, the Supreme Court held that displaying the Ten Commandments on the wall of a public-school classroom—in the absence of any legitimate educational purpose—violates the Establishment Clause. *Stone*, 449 U.S. at 41–42. The Court relied on *Lemon* and two early school prayer cases, *Schempp*, cited above, and *Engel v. Vitale*, 370 U.S. 421 (1962).

Over the following decades, the Court repeatedly questioned *Lemon*. For example, in *Van Orden v. Perry*, 545 U.S. 677 (2005), another Ten Commandments case, the Court declined to follow *Lemon*, opting instead to conduct a historical analysis. *Id.* at 686 ("Whatever may be the fate of the *Lemon* test in the larger scheme of Establishment Clause jurisprudence, we think it not useful in dealing with the sort of passive monument that Texas has erected on its Capitol grounds. Instead, our analysis is driven both by the nature of the monument and by our Nation's history."). Nevertheless, the Court recognized that its public school cases, like *Stone, Schempp*, and *Engel*, remain good law. *Id.* at 690–91. That is so because the Court has been "vigilant in monitoring

compliance with the Establishment Clause in elementary and secondary schools." *Id.* at 691 (quoting *Edwards v. Aguillard*, 482 U.S. 578, 583–84 (1987)).

Recently, the Supreme Court abandoned *Lemon* altogether in favor of interpreting the Establishment Clause by "reference to historical practices and understandings." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 535 (2022) (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014)) (internal quotation marks omitted). Once again, the Court gave no indication that it was abrogating or overruling any of its public school cases.

While *Kennedy* abrogated *Lemon*, Defendants overstate its impact on early Establishment Clause cases. Had the Court intended to overrule *Stone*, *Schempp*, or *Engel*, it would have said so. It did not. Indeed, even in *Van Orden*, which adopted the historical approach later propounded in *Kennedy*, the Court recognized the continued vitality of such cases. *See Van Orden*, 545 U.S. at 690–91. Even if *Kennedy* undermined *Stone* to some extent, it would still control this case. Lower courts must apply controlling Supreme Court precedent, even when it "appears to rest on reasons rejected in some other line of decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989).

The present case is factually indistinguishable from *Stone*. The state statutes are remarkably similar. If anything, S.B. 10 mandates more intrusive displays of the Ten Commandments than those at issue in *Stone*. *Compare* TEX. EDUC. CODE ANN. § 1.0041(a)–(b) (requiring the displays to be placed "in a conspicuous place in each classroom" and include text "that is legible to a person with average vision from anywhere in the classroom"), *with* KY. REV. STAT. ANN. § 158.178 (requiring the displays to be placed "on a wall in each . . . classroom"). Because displaying the Ten Commandments on the wall of a public-school classroom as set forth in S.B. 10 violates the

Establishment Clause, *see Stone*, 449 U.S. at 41–42, Plaintiffs are likely to prevail on the merits of their claim.

The remaining preliminary injunction factors also weigh in favor of injunctive relief. If the Court does not grant injunctive relief, Plaintiffs will suffer the "loss of First Amendment freedoms," which "unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373. Because the government opposes the injunction, the balance of harm and public interest factors merge. *AbbVie, Inc. v. Fitch*, 152 F.4th 635, 642 (5th Cir. 2025). The combined analysis of these factors is straightforward. It plainly serves the public interest to protect First Amendment freedoms. *Texans for Free Inter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (citation omitted).

### C.   Scope of Relief

Because Plaintiffs are entitled to a preliminary injunction, the only remaining question is the scope of the relief. Plaintiffs ask the Court to enjoin Defendants from "complying with S.B. 10 by displaying the Ten Commandments in public classrooms and requiring all Defendants to immediately remove any S.B. 10 displays currently posted." Dkt. No. 4 at 25. Defendants assert that this relief is "far too broad." *See* Dkt. No. 42 at 36. They argue that any injunction should be limited to "specific schools that Plaintiffs' children attend." *Id.* at 37. According to Defendants, a broader injunction would impermissibly provide more than "complete relief." *Id.* Plaintiffs disagree. They argue that their children "travel from school to school to participate in both mandatory and voluntary school-related activities." Dkt. No. 52 at 48. Thus, "restricting the scope of a preliminary injunction to just the individual child-Plaintiffs' classrooms or schools is unlikely to avoid constitutional injury." *Id.* The Court agrees with Plaintiffs.

Defendants' narrow construction of "complete relief" ignores the practical reality of the public school system. Plaintiffs introduced undisputed evidence that their children move between

schools within their ISDs for school-related activities. *See* Dkt. No. 52-2. Therefore, it is impracticable, if not impossible, to prevent Plaintiffs from being subjected to unwelcome religious displays without enjoining Defendants from enforcing S.B. 10 across their districts. *See, e.g., Stinson v. Fayetteville Sch. Dist. No. 1*, — F. Supp. 3d — (W.D. Ark. 2025); *Nathan v. Alamo Heights Indep. Sch. Dist.*, — F. Supp. 3d — (W.D. Tex. 2025); *see also Jackson Fed'n of Tchrs. v. Fitch*, — F. Supp. 3d — (S.D. Miss. 2025) (remarking that "it would be impracticable, if not impossible, to carve out an injunction that is distinctly limited to the named plaintiffs").

### III. CONCLUSION

For the forgoing reasons, the Motion to Dismiss (Dkt. No. 42) is **DENIED**, and the Motion for Preliminary Injunction (Dkt. No. 4) is **GRANTED**.

**IT IS HEREBY ORDERED** that Defendants and their officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them are **PRELIMINARILY ENJOINED** from displaying the Ten Commandments pursuant to S.B. 10. The Court waives the bond requirement of Rule 65(c).

**IT IS FURTHER ORDERED** that, by **Monday, December 1, 2025**, Defendants shall remove any displays of the Ten Commandments presently erected in any classrooms within their districts.

**IT IS FURTHER ORDERED** that, by **Tuesday, December 9, 2025**, Defendants shall file an advisory certifying their compliance with this Order.

**IT IS FURTHER ORDERED** that all future deadlines and proceedings in this case are **STAYED** pending the resolution of any appeal of this Order and the resolution of related cases pending before the Fifth Circuit. *See Roake v. Brumley*, No. 24-30706 (5th Cir. 2024); *Nathan v. Alamo Heights Indep. Sch. Dist.*, No. 25-50695 (5th Cir. 2025).

SIGNED this \_\_\_18\_\_\_ day of November, 2025.

_____
ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE